IN THE DISTRICT COURT OF THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**MARVIN CLIFFORD**                                                                                    **PLAINTIFF**

v.                                                                       CAUSE No. 1:20-cv-344-LG-RHW

**HARRISON COUNTY, MISSISSIPPI;
HARRISON COUNTY SHERIFF'S
DEPARTMENT; SHERIFF TROY
PETERSON, in his official capacity;
and JOHN DOE "A"-"E"**                                                                              **DEFENDANTS**

## COMPLAINT

COMES NOW, Marvin Clifford, to bring this action against the above-named Defendants, stating in support thereof the following, to-wit:

1. Plaintiff Marvin Clifford is a resident of Harrison County, Mississippi, residing at 18289 Old Highway 49, Saucier, MS 39574.

2. Defendant, Harrison County, Mississippi is a political subdivision of the State of Mississippi and is the entity responsible for the oversight and funding of the Harrison County Sheriff's Department. This Defendant may be served with process by effecting the same upon the president of the Board of Supervisors, Connie Rockco, and/or the Chancery Clerk of Harrison County, Mississippi, John McAdams, at the Harrison County Courthouse in Gulfport, Mississippi.

3. Defendants Harrison County Sheriff's Department and Sherriff Troy Peterson may be served with process upon Sheriff Troy Peterson, the elected Sheriff of Harrison County, at the Harrison County Sherriff's Office, 10451 Larkin Smith Drive, Gulfport, Mississippi 39503.

4. Jurisdiction is proper in this Court pursuant to 28 USC §1331 and 28 USC §1343.

5. Venue is proper in this Court pursuant to 28 USC §1391 as a substantial part of the events or omissions giving rise to the claim occurred within this judicial district including but not

       limited to the deprivation of Plaintiff's rights under color of any statute, ordinance, regulation, custom, or usage (42 USC §1983) within this judicial district.

6. Notice of Plaintiff's was sent to Sheriff Troy Peterson in care of the Harrison County Chancery Clerk on February 18, 2020, and again May 27, 2020, via certified mail pursuant to MISS. CODE ANN. § 11-46-11. Plaintiff was required to send the notice on a second occasion as the United States Postal Service stated about the first notice that "it appears likely the item was damaged in processing and was not legible or intact after that" and thus Plaintiff could not confirm Defendants' receipt.

7. Plaintiff received confirmation that the second notice was received by Defendants on May 29, 2020.

8. Plaintiff possesses a license to carry a concealed pistol or revolver issued pursuant to MISS. CODE ANN. § 45-9-101. Additionally, Plaintiff undertook the necessary training and skills proficiency testing to obtain an "enhanced" concealed carry license issued under MISS. CODE ANN. § 97-37-7.

9. On October 8, 2019, Plaintiff entered the Harrison County Courthouse for the purpose of absentee voting.

10. Plaintiff declared to the deputy on duty (name unknown) that he was a lawfully armed enhanced licensee. The deputy requested Clifford's concealed carry license. The deputy then demanded Clifford state his purpose for visiting a public facility. The deputy did not restrain his inquiry to whether Clifford had business in or was traveling to a courtroom (where Plaintiff would not be lawfully allowed to access if court was in session). Plaintiff, although not obligated to do so under law, complied with the deputy and stated his business.

11. The deputy took Plaintiff's license and walked off. Upon information and belief, the deputy made a call for the purpose of verifying the validity of the license. It is Plaintiff's

belief, to be borne out in discovery, that the deputy also performed a search of the state and National Crime Information Center (NCIC) databases.

12. While this check was performed, the deputy retained possession of Plaintiff's license and did not indicate Plaintiff was free to proceed about his lawful business. Plaintiff's liberty was restrained and Plaintiff was detained without any basis to believe Plaintiff had or was about to commit any crime. This was a violation of Plaintiff's rights. In *Commonwealth v. Cost*, the detaining officer had not witnessed any criminal activity when conducting his investigatory stop. No. 39 EAP 2018, 2020 WL 354975, at *2 (Pa. Jan. 22, 2020). The Pennsylvania Supreme Court held that the officer's retention of the licensee's identification card to conduct a warrant check was sufficient to signify to a reasonable person that he was not free to proceed about his business. *Id*. at *10. See also *United States v. Mendenhall*, 446U.S.544 (1980).

13. Apparently content Plaintiff's license was valid, and without any basis or excuse whatsoever to continue the unlawful detention of Plaintiff, the deputy then allowed Plaintiff to proceed about his business.

14. However, upon Plaintiff's exit of the facility, the deputy demanded Plaintiff sign a log book containing his name, license number, and the purpose of his business.

15. So far as Plaintiff knows, no visitors other than enhanced licensees were required to provide identification, state the purpose of their visit, sign a log book, or provide any other personal information.

16. Plaintiff is further informed that the Harrison County Sheriff's Department on occasion will assign a deputy to shadow a licensee during part or the entirety of their visit to the courthouse. Again, so far as Plaintiff knows, this is done only for lawful concealed carry licensees who are in full compliance with all laws and not suspected of committing any crime.

17. Defendants through their conduct evidence their contempt of Plaintiff's lawful exercise of his constitutionally protected rights and desire to intimidate and discourage the exercise of those rights through such activity.

18. Attached hereto as Exhibit A is an affidavit executed by Plaintiff attesting to the truthfulness of the above stated facts.

19. MISS. CODE ANN. § 97-37-7(2) states in relevant part that an enhanced licensee "shall also be authorized to carry weapons in courthouses except in courtrooms during a judicial proceeding."

20. Mississippi Supreme Court has held, "The law of Mississippi is clear: enhanced-carry licensees are permitted to possess a firearm in courthouses."  See *Ward v. Colom*, 253 So. 3d 265, 270(Miss. 2018).

21. The Mississippi Attorney General has opined that law enforcement officers may not require permitted individuals to perform additional steps, such as visiting a police or security office for the purpose of producing the license and verifying their lawful authority to possess and carry pursuant to said license. See Atty. Gen. Op., Jan. 5, 2012, to Hank Bounds ("this statute only requires the licensee to produce the license where the licensee is found, upon individual demand.")

22. Plaintiff was acting lawfully, therefore the deputy's suspicion-less investigation and detention was a violation of his right to be free of unreasonable search and seizure protected by the Mississippi and federal constitutions. "Both the Fourth Amendment to the United States Constitution and Article III, Section 23 of the Mississippi Constitution protect an individual's right to be free from unreasonable searches and seizures." *Cole v. State*, 242 So.3d 31, 38 (Miss. 2018).

23. Additionally, the seizure of Plaintiff while the deputy ran a search was unconstitutional. "A seizure begins when 'all circumstances surrounding the incident' are such that 'a

reasonable person would have believed that he was not free to leave.'" *Cole*, 242 So.3d at 41.

24. Plaintiff reasonably believed he was not free to leave until his license was returned and he was given permission to proceed.

25. Defendants are liable to Plaintiff under 42 U.S. Code § 1983 as they were acting under color of any statute, ordinance, regulation, custom, or usage to deprive Plaintiff of his rights and had clear knowledge and notice that the very behavior at issue was proscribed by law.

26. The law is clear that citizens "may not be detained even momentarily without reasonable, objective grounds for doing so . . . ." *Florida v. Royer*, 460 U.S. 491, 498 (1983), yet Defendants did exactly that for unlawful purposes.

27. All of the deputy's actions after requesting Plaintiff show his concealed carry license were in violation of not only the Mississippi Constitution Article 1 Section 23,[1] but also the Fourth Amendment to the United States Constitution.[2]

28. MISS. CODE ANN. § 19-25-19 states, "all sheriffs shall be liable for the acts of their deputies ...." Therefore, Defendants liable for the violation of Plaintiff's Constitutionally protected rights against unreasonable search and seizure. Additionally, Plaintiff expects discovery to show that the deputy was acting pursuant to directives from the Defendants. Should discovery show that Defendants acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud, Plaintiff shall be entitled to exemplary damages from Defendants.

---

[1] "The people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized."

[2] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

29. As a direct and proximate consequence of the Defendants' actions, Plaintiff was deprived of certain rights guaranteed by the Constitutions of Mississippi and the United States of America. Plaintiff suffered immediate and irreparable injury due to Defendants' egregious violation of Plaintiff's constitutional rights. As a result of the actions of the Defendants, Plaintiff experienced extreme pain, suffering, humiliation, degradation, mental distress, emotional distress, and loss of productive use of time.

30. Undeterred by all the above, and with actual knowledge of the wrongfulness of their actions, Defendants continued to intentionally violate Plaintiff's rights in violation of law.

31. On September 10, 2020, Plaintiff was once again unlawfully detained when trying to enter the courthouse for lawful business. The initial detention was conducted by a private security agent but shortly ratified and continued by Sheriff's Deputy J. Morgan.

32. On September 10, 2020, Plaintiff was unlawfully and unjustifiably detained for no less than twenty-seven minutes during which time he was once again interrogated about his business at the courthouse, had yet another unlawful NICS check performed, and treated differently from other citizens simply because he chose to exercise his constitutionally protected rights.

33. Plaintiff is entitled to the following relief as a result of Defendants' unconstitutional violations:

    a. Compensatory damages against all defendants, jointly and severally, in an amount not less than $75,000.00;

    b. Punitive damages against all Defendants, jointly and severally, for all constitutional violations in an amount sufficient to deter such conduct in the future;

    c. Attorney's fees and costs of litigation; and

    d. Any and all further legal and equitable relief to which Plaintiff is entitled or the Court deems appropriate and just.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays for the relief set forth supra, together with any and all other relief, general or specific, appropriate in the circumstances.

        MARVIN CLIFFORD

        BY: FREELAND MARTZ, PLLC

        _____
        M. REED MARTZ, MS BAR 101443

FREELAND MARTZ, PLLC
302 Enterprise Drive, Suite A
Oxford, MS 38655
662.234.1711
reed@freelandmartz.com